## STATE OF CONNECTICUT *v.* JAMES GRAHAM
## (AC 21081)

Lavery, C. J., and Dranginis and Daly, Js.

Submitted on briefs September 10—officially released November 20, 2001

*Thomas M. Conroy* filed a brief for the appellant (defendant).

*Michael Dearington*, state's attorney, *Robert J. O'Brien*, supervisory assistant state's attorney, and *Michael E. O'Hare*, assistant state's attorney, filed a brief for the appellee (state).

*Opinion*

DRANGINIS, J. The defendant, James Graham, appeals from the judgment of conviction, following a jury trial, of larceny in the second degree in violation of General Statutes § 53a-123 (a) (3).[1] On appeal, the defendant claims that the trial court improperly restricted his closing argument and, therefore, he is entitled to a new trial. We affirm the judgment of the trial court.

The following facts are relevant to our resolution of the defendant's appeal. Late in the evening of December 11, 1998, the victim, Jamie Jinks, needed transportation to his home after visiting with his girlfriend at her residence. The victim noticed that the defendant and Derrick Harris, whom he had known for several years, were sitting in a motor vehicle that was parked on the side of the road and asked them for a ride to his home. They agreed to give the victim a ride home, and the victim entered the car and sat in the backseat with another person, unknown to him, who slept throughout the incident.

The defendant drove the motor vehicle a short distance before stopping at the side of the road. Harris turned around and questioned the victim about whether he was wearing his gold necklace with a medallion.

[1] General Statutes § 53a-123 (a) provides in relevant part: "A person is guilty of larceny in the second degree when he commits larceny, as defined in section 53a-119, and . . . (3) the property, regardless of its nature or value, is taken from the person of another . . . ."

Harris then pointed a pistol at the victim and demanded that the victim give to him the necklace and his money. The victim asked the defendant if it "had to be like that," to which the defendant responded, "It's like that." The victim gave his money to the defendant, while Harris, still pointing the pistol at the victim, took the victim's necklace from his person. The defendant and Harris then told the victim to leave the car and, after the victim exited, the defendant drove away.

The defendant and Harris were subsequently arrested. The defendant was charged with robbery in the first degree in violation of General Statutes § 53a-134 (a) (2) and larceny in the second degree in violation of § 53a-123 (a) (3). A jury trial ensued. The defendant was convicted of larceny in the second degree. This appeal followed.

On appeal, the defendant contends that the court improperly precluded him from commenting in closing argument about the failure of the state to call Harris as a witness and, therefore, that this case should be remanded for a new trial. Specifically, the defendant claims that the court abused its discretion because his intended comment was appropriate and in accordance with the holding of our Supreme Court in *State* v. *Malave*, 250 Conn. 722, 739, 737 A.2d 442 (1999) (en banc), cert. denied, 528 U.S. 1170, 120 S. Ct. 1195, 145 L. Ed. 2d 1099 (2000). We disagree.

The following additional facts are relevant to our resolution of the defendant's claim. Toward the conclusion of the trial, the defendant notified the court and the state that he intended to comment during closing argument about the state's failure to call Harris as a witness pursuant to *State* v. *Malave*, supra, 250 Conn. 722.[2] In support of his request to comment on the failure

[2] Pursuant to *State* v. *Malave*, supra, 250 Conn. 740, "[f]airness . . . dictates that a party who intends to comment on the opposing party's failure to call a certain witness must so notify the court and the opposing party in advance of closing arguments."

of the state to call Harris, the defendant stated, "It wasn't my intention to argue that . . . this is someone the state would naturally call, and they [the jurors] should infer from this story that there would be testimony against the state. I would merely mention that this was someone whose testimony is not available, that had it been available, it might have assisted the jury in the deciding the facts of the case one way or the other. And since it isn't here and because the state has the high burden of proof in this case, that's something that the jury should consider. That would be my purpose in making that argument." The court precluded the defendant from commenting in closing argument about the state's failure to call Harris as witness, stating that *"Malave* . . . does not support the claims that the defendant is making with respect to the testimony of Derrick Harris as a witness."

The defendant's claim arises as a result of the decision of our Supreme Court in *State* v. *Malave,* supra, 250 Conn. 722. In *Malave,* our Supreme Court abandoned, in criminal cases, the *Secondino*[3] rule, also known as the missing witness rule, which sanctioned, under certain circumstances, a jury instruction that an adverse inference may be drawn from the failure of a party to produce a witness. Although our Supreme Court abandoned the *Secondino* rule, it did not intend to "prohibit counsel from making appropriate comment, in closing arguments, about the absence of a particular witness, insofar as that witness' absence may reflect on the weakness of the opposing party's case." Id., 739. Comments in closing argument that do "not directly exhort the jury to draw an adverse inference by virtue of the witness' absence" do not necessarily fall under the ambit of *Secondino*; id.; and accordingly are not forbidden by *Malave.* Our Supreme Court further provided that "[o]f course, the trial court retains wide lati-

---

[3] *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 165 A.2d 598 (1960).

tude to permit or preclude such a comment, and may, in its discretion, allow a party to adduce additional evidence relative to the missing witness issue." Id., 740; see *State* v. *Joyce*, 243 Conn. 282, 305–306, 705 A.2d 181 (1997), cert. denied, 523 U.S. 1077, 118 S. Ct. 1523, 140 L. Ed. 2d 674 (1998).

The broad discretion vested in trial courts by *Malave* mirrors the general standards regarding the trial court's ability to limit closing argument. "[T]he scope of final argument lies within the sound discretion of the court . . . subject to appropriate constitutional limitations. . . . It is within the discretion of the trial court to limit the scope of final argument to prevent comment on facts that are not properly in evidence, to prevent the jury from considering matters in the realm of speculation and to prevent the jury from being influenced by improper matter that might prejudice its deliberations. . . . While we are sensitive to the discretion of the trial court in limiting argument to the actual issues of the case, tight control over argument is undesirable when counsel is precluded from raising a significant issue." (Internal quotation marks omitted.) *State* v. *Joyce*, supra, 243 Conn. 305–306.

We conclude that the court did not abuse its discretion in precluding the defendant from commenting in closing argument about the failure of the state to call Harris as a witness. The defendant failed to explain how the state's decision not to call Harris exposed a weakness in the state's case, nor did the defendant make an offer of proof regarding the substance of Harris' potential testimony. Rather, in justification of his request to comment, the defendant offered only a blanket statement that Harris' failure to testify demonstrated a weakness in the state's case.

"Counsel may comment [in closing argument] upon facts properly in evidence and upon *reasonable* inferences to be drawn from them. . . . Counsel may not,

however, comment on or suggest [in closing argument] an inference from facts not in evidence." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Banks*, 59 Conn. App. 112, 129, 755 A.2d 951, cert. denied, 254 Conn. 950, 762 A.2d 904 (2000). Similarly, a party cannot merely comment on the failure of the opposing party to present a witness without first providing a factual or evidentiary foundation from which to infer a weakness in the opposing party's case. See id. Therefore, we cannot conclude that the trial court abused its discretion when the defendant failed to demonstrate how the state's disinclination to call Harris as a witness reflects a weakness in the state's case.[4]

The defendant's reliance on *State* v. *Ross*, 18 Conn. App. 423, 558 A.2d 1015 (1989), is misplaced. In *Ross*, the defendant sought, in pertinent part, to comment in closing argument on the weakness of the state's case on the basis of the absence of testimony from the sole eyewitness to the charged crime.[5] This court reversed

[4] The state proffers the additional argument that the court did not abuse its discretion because Harris was an unavailable witness. Specifically, the state asserts that Harris was an unavailable witness because, although Harris pleaded guilty to the charges against him, he was awaiting sentencing at the time of the conclusion of the defendant's trial and, therefore, would have invoked his fifth amendment privilege against self-incrimination. Our Supreme Court in *Malave* stated that "comment on the opposing party's failure to call a particular witness would be improper if that witness were unavailable due to death, disappearance or otherwise." *State* v. *Malave*, supra, 250 Conn. 740. Moreover, we note the case of *State* v. *Young*, 258 Conn. 79, 93–94, 779 A.2d 112 (2001), in which our Supreme Court held, in pertinent part, that a witness is unavailable for purposes of *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 165 A.2d 598 (1960), if it is apparent that the witness would have invoked the privilege against self-incrimination and refused to testify if called. The record here does not disclose whether Harris was awaiting sentencing at the time of the trial or was otherwise unavailable. Therefore, we will not address that argument.

[5] In *State* v. *Ross*, supra, 18 Conn. App. 424, the defendant was charged with manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3). The sole eyewitness to the crime, Jose Burgos-Ortiz, disappeared after providing a statement implicating the defendant to the police. The defendant in *Ross*, which arose prior to *Malave*, did not seek a charge

the judgment of the trial court and, on remand, permitted the defendant to refer to the absence of the eyewitness' testimony in closing argument. Contrary to the present case, the lack of the eyewitness' testimony in *Ross* clearly exposed a weakness in the state's case. In fact, the defendant in *Ross* attempted[6] to call several other witnesses whose testimony would have implicated the missing witness with the commission of the crime. Here, the defendant's claim that the absence of Harris' testimony constitutes a weakness in the state's case was based on pure speculation and was made without factual or evidentiary support.

The judgment is affirmed.

In this opinion the other judges concurred.

pursuant to *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 165 A.2d 598 (1960), because the missing eyewitness, Burgos-Ortiz, was unavailable.

[6] In *State* v. *Ross*, supra, 18 Conn. App. 431, we held, in pertinent part, that the trial court committed reversible error in preventing the defendant from presenting direct evidence through numerous witnesses suggesting that the missing eyewitness could have committed the crime.